Opinion by
 

 Woodside, J.,
 

 This is an appeal from an order of the Court of Quarter Sessions of Westmoreland County affirming the suspension of a restaurant liquor license because the licensee permitted a female to serve alcoholic beverages from behind the bar in violation of the Liquor Code.
 

 The appellant questions the constitutionality of the so-called “Barmaid Act”. Pennsylvania has had several such acts. See Act of March 28, 1878, P. L. 9; the Act of June 9, 1939, P. L. 307, and the Act of July 18, 1941, P. L. 408, all now specifically repealed. The barmaid provision is presently contained in Section 493 of the Liquor Code of April 12, 1951, P. L. 90, 47 P.S. §4-493, and provides that “It shall be unlawful . . . (25)
 
 For any licensee or his agent, to employ or permit the employment of any female at his licensed hotel, restaurant or eating place to mix or serve liquor or
 
 
 *391
 

 malt or brewed beverages behind the bar,
 
 or to employ any female for the purpose of enticing customers, or to encourage them to drink liquor, or make assignations for improper purposes: Provided, That nothing in this section shall he construed to prevent the employment of any female waitress who regularly takes orders for food from serving food, liquor or malt or brewed beverages at tables; also, that nothing shall prevent any such licensees from employing any female stenographer, hotel secretary, clerk or other employe for their respective positions: Provided, further, That nothing in this section shall be so construed as to prevent the wife of any such licensee or agent from mixing or serving liquor or malt or brewed beverages behind the bar of any such licensed place.”
 

 The appellant contends that the provision italicized above does not bear a reasonable relation to the evils sought to be controlled and is therefore unconstitutional. The appellant assumes that the only reason for the challenged provision is to prevent the use of females to entice customers. As the same clause
 
 specifically
 
 prohibits employing females to entice customers, the legislature undoubtedly had some other reason for the challenged provision. We need not determine what the legislators had in mind. The provision may have been adopted to protect “the working girl” from the vulgarity and violence which has a greater tendency to develop at a bar than at most other places. Whatever the reason for it, the prohibition is not of recent development nor is it peculiar to Pennsylvania. Many states have similar provisions and, as we have already indicated, Pennsylvania had a statute on the subject as early as 1878.
 

 “There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages.”
 
 Tahiti
 
 
 *392
 

 Bar, Inc. Liquor License Case,
 
 395 Pa. 355, 360, 150 A. 2d 112, 115 (1959),
 

 It is true, as argued by the appellant, that the legislature cannot arbitrarily enact laws that have absolutely no relationship to the eradication of .the evils of alcoholic beverages. But the purpose, the reasonableness and the value of any rule regulating alcoholic beverages must be left to the legislature unless, no legitimate purpose for such rule is conceivable.
 

 The answer to the contentions of the appellant is contained in the opinion of the Supreme Court of the United States in
 
 Goesaert v. Cleary,
 
 335 U.S. 464, 69 S. Ct. 198 (1948) where that Court .sustained the validity of a Michigan statute which forbid a female, unless the wife or daughter of a male licensee, from tending bar in cities having a population of 50,000 or more.
 

 We quote from the opinion of the Court written by Mr. Justice Frankfurter in that case: “We are, to be sure, dealing with a historic calling. We meet the alewife, sprightly and ribald, in Shakespeare, but centuries before him she played a role in the social life of England. . . . The Fourteenth Amendment did not tear history up by the roots, and the regulation of the liquor traffic is o>ne of the oldest and most untrammeled of legislative powers. Michigan could, beyond question, forbid all women from working behind a bar. This is so despite the vast changes in the social and legal position of women. The fact that women may now have achieved the virtues that men have long claimed as their prerogatives and now indulge in vices that men have long practiced, does not preclude the States from drawing a sharp line between .the sexes, cértainly in such matters as the regulation of the liquor traffic. . . . The Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards.
 

 
 *393
 
 “While Michigan may deny to all women opportunities for bartending, Michigan cannot play favorites among women without rhyme or reason. The Constitution in enjoining the equal protection of the laws upon States precludes irrational discrimination as between persons or groups of persons in the incidence of a law. But the Constitution does not require situations ‘which are different in fact or opinion to be treated in law as though they were the same.’ Tigner v. Texas, 310 U.S. 141, 147. Since bartending by women may, in the allowable legislative judgment, give rise to moral and social problems against which it may devise preventive measures, the legislature need not go to the full length of prohibition if it believes that as to a defined group of females other factors are operating which either eliminate or reduce the moral and social problems otherwise calling for prohibition. Michigan evidently believes that the oversight assured through ownership of a bar by a barmaid’s husband or father minimizes hazards that may confront a barmaid without such protecting oversight. This Court is certainly not in a position to gainsay such belief by the Michigan legislature. If it is entertainable, as we think it is, Michigan has not violated its duty to afford equal protection of its laws. We cannot cross-examine either actually or argumentatively the mind of Michigan legislators nor question their motives. Since the line they have drawn is not without a basis in reason, we cannot give ear to the suggestion that the real impulse behind this legislation was an unchivalrous desire of male bartenders to try to monopolize the calling.
 

 “Nor is it unconstitutional for Michigan to withdraw from women the occupation of bartending because it allows women to serve as waitresses where liquor is dispensed.”
 

 
 *394
 
 See also
 
 Cronin v. Adams,
 
 192 U.S. 108, 24 S. Ct. 219 (1904); 30 Am. Jur., Intoxicating Liquor §261, 172 A.L.R. 620;
 
 Milwaukee v. Piscuine,
 
 18 Wis. 2d 599, 119 N.W. 2d 442 (1963);
 
 Anderson v. City of St. Paul,
 
 226 Minn, 186, 32 N.W. 2d 538 (1948).
 

 Counsel for appellant, calling upon his experience as “a member of many clubs” and “a patron of many restaurant-bars”, concludes “there is no apparent difference in the individuals who patronize the restaurant-bars and those who patronize the club-bars”. Therefore, he argues, it is unconstitutional to prohibit the employment of - barmaids in restaurants when their employment is permitted in clubs. For the reasons set forth in the above cases, the legislature may establish different rules for club licensees and other licensees, and may allow barmaids in clubs and not in restaurants. ■
 

 Order affirmed.